IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| LARRY MAXWELL, AND SIMILARLY SITUATED INDIVIDUALS (Jane and John Does 1-100,000,000), | § § § § § § | |
| Plaintiffs | | |
| v. | § § § § § § § § § § § | CIVIL ACTION NO. 3:21-cv-330 |
| CVS PHARMACY, INC., H-E-B, LP, WAL-MART STORES TEXAS LLC, THE KROGER CO., WALGREEN CO., UNIVERSITY OF TEXAS MEDICAL BRANCH, GALVESTION aka UTMB HEALTH, | | (Upon Removal from the District Court, 239th Judicial District, Brazoria County, Texas, Cause No.: 115061-CV) |
| Defendants | | |

## NOTICE OF REMOVAL

1.      Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1442, and 1446 (and any other applicable laws), Defendant Walmart Inc. ("Walmart"), improperly identified as Wal-Mart Stores Texas LLC, hereby gives notice of removal of this action, captioned *Larry Maxwell, et al. v. CVS Pharmacy, Inc., et al.*; bearing case number 115061-CV, from the 239th Judicial District of Brazoria County, Texas to the United States District Court for the Southern District of Texas.

2.      Removal is proper pursuant to the federal officer removal statute, 28 U.S.C. § 1442, as well as 28 U.S.C. §§ 1441(a) and 1446.  In addition, this Court has original federal question jurisdiction under 28 U.S.C. §1331 because the Petition necessarily arises under federal laws and presents substantial federal questions.  This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over any claims for which it does not have original federal question jurisdiction because they form part of the same case or controversy as those claims over which the Court has original jurisdiction.

## BACKGROUND AND PROCEDURAL HISTORY

3. Severe acute respiratory syndrome coronavirus (SARS-CoV-2), popularly known as COVID-19, appeared in the United States in early 2020, requiring the Secretary of the United States Department of Health and Human Services ("HHS") to activate The Public Readiness and Emergency Preparedness ("PREP") Act—42 U.S.C. §§ 247d-6d, 247d-6e (2021). *See* Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15198 (Mar. 17, 2020).[1]

4. The Secretary "determine[d] that the spread of SARS-CoV-2 or a virus mutating therefrom and the resulting disease, COVID-19, constitutes a public health emergency for purposes of this Declaration under the PREP Act." *Id.*; *see also* Fourth Amendment to the Declaration, 85 Fed. Reg. 79190, 79197 (Dec. 9, 2020) ("COVID-19 is a global challenge that requires a whole-of-nation response. . . . The world is facing an unprecedented pandemic"). In addition, on the basis of such determination, the Secretary of HHS, in March 2020, "declared that circumstances exist justifying the authorization of emergency use of drugs and biological products during the COVID-19 pandemic, pursuant to Section 564 of the Federal Food, Drug, and Cosmetic Act ("FD&C Act") 21 U.S.C. 360bbb-3, subject to terms of any authorization issued under that section."[2]

5. As a part of its response to the pandemic, our federal government worked with private pharmaceutical manufacturers to develop a vaccine to fight the spread of COVID-19. On December 11, 2020, the Food and Drug Administration (FDA) issued an Emergency Use

---

[1] U.S. Department of Human and Health Services, Public Readiness and Emergency Preparedness Act, https://www.phe.gov/Preparedness/legal/prepact/Pages/default.aspx#covid (last accessed on Nov. 17, 2021).

[2] *See* Corr. from U.S. Food & Drug Administration ("FDA") to Pfizer, Inc., https://www.fda.gov/media/150386/download.

Authorization (EUA) for emergency use of Pfizer-BioNTech COVID-19 Vaccine for the prevention of COVID-19 for certain populations. *Id.* Subsequently, FDA issued EUAs for COVID-19 vaccines developed by ModernaTX, Inc. and Janssen Biotech Inc.[3]

6. On August 23, 2021, FDA approved the first COVID-19 vaccine, which has become known as the Pfizer-BioNTech COVID-19 Vaccine.[4] Subsequently, FDA approved the Moderna and Janssen COVID-19 vaccines as well. *See* 42 U.S.C. § 262, 21 U.S. Code §§ 331, 355.[5] A vaccine is both a biological product and a drug. *See* FD&C Act § 201(g), 21 U.S.C. § 321(g); 42 U.S.C. § 262(a).[6]

7. To ensure the "safe and effective" distribution of the COVID-19 vaccines, the federal government has partnered with various federal, state and local agencies, vaccine manufacturers, healthcare providers, and pharmacies who are enrolled in the COVID-19

---

[3] *See* FDA, Moderna COVID-19 Vaccine, https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/moderna-covid-19-vaccine; FDA Janssen COVID-19 Vaccine, https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/janssen-covid-19-vaccine (last accessed on Nov. 17, 2021).

[4] *See* FDA, Comirnaty and Pfizer-BioNTech COVID-19 Vaccine, https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/comirnaty-and-pfizer-biontech-covid-19-vaccine (last accessed on Nov. 18, 2021).

[5] *See* 42 U.S.C. § 262(a) ("No person shall introduce or deliver for introduction into interstate commerce any biological product unless—(A) a biologics license under this subsection or subsection (k) is in effect for the biological product; and (B) each package of the biological product is plainly marked with—(i) the proper name of the biological product contained in the package; (ii) the name, address, and applicable license number of the manufacturer of the biological product; and (iii) the expiration date of the biological product.); 21 U.S. Code § 331 ("The following acts and the causing thereof are prohibited: (a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded. (b) The adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce. (c) The receipt in interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded, and the delivery or proffered delivery thereof for pay or otherwise. (d) The introduction or delivery for introduction into interstate commerce of any article in violation of section 344, 350d, 355, or 360bbb–3 of this title."); 21 U.S. Code § 355 ("No person shall introduce or deliver for introduction into interstate commerce any new drug, unless an approval of an application filed pursuant to subsection (b) or (j) is effective with respect to such drug.").

[6] *See also* FD&C Act § 564(a)(4)(C) (defining "product" to mean "a drug, device, or biological product").

Vaccination Program to provide the vaccines to the population.[7]  Walmart is a retail pharmacy that has partnered with the CDC, as authorized by the HHS under the PREP Act, to administer the FDA-authorized and FDA–approved COVID-19 vaccines to their patients.  The vaccines are provided to Walmart by the federal government.  In addition, the U.S. government also provides the syringes, needles, vaccination cards, FDA-approved Vaccine Information Fact Sheet for Recipients and Caregivers, and other products and ancillary supplies needed in the administration of the COVID-vaccines.[8]

8.      Walmart administers the COVID-19 vaccines only in accordance with the FDA authorization or approval for that specific vaccine.  In addition, Walmart must provide to its patients the FDA-approved Vaccine Information Fact Sheet.[9]

9.      Further, as part of its response to the pandemic, our federal government ensured that its COVID-19 healthcare partners, just like Walmart and the other Defendants in this case, would receive immunity protections to make certain that precious resources were not deflected to defending disparate state law negligence claims during this critical time.  Specifically, under the PREP Act,

> [A] covered person shall be *immune from suit and liability* under Federal *and State law with respect to claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure* if a declaration under subsection (b) has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d(a)(1) (emphases added).

---

[7]  *See* Centers for Disease Control and Prevention, "How the COVID-19 Vaccines Get to you," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/distributing.html.

[8]  *See* CDC, Pharmacies Participating in the Federal Retail Pharmacy Program, https://www.cdc.gov/vaccines/covid-19/retail-pharmacy-program/participating-pharmacies.html    (last accessed Nov. 18, 2021).

[9]  *See* eg. FDA Corr. at 16, supra n.2.

10.     Plaintiff commenced this lawsuit in the 239th Judicial District of Brazoria County, Texas by filing a Petition captioned *Larry Maxwell, et al. v. CVS Pharmacy, Inc., et al.*; case number 115061-CV, on or about October 21, 2021 (the "State Court Action").  *See* Original Petition, attached as Ex. B-1.  Plaintiff filed an Amended Petition ("Petition") on November 4, 2021. *See* Ex. B-4.

11.     Plaintiff served the Original Petition on Walmart on November 1, 2021.  *See* Ex. C-1, Affidavit of Service on Walmart.  Affidavits of Service on Defendants CVS Pharmacy, Inc., H-E-B, LP, The Kroger Co., and Walgreen Co. have been filed with the state court clerk.  *See* Exs. C-2, C-3, C-4, and C-5.  None of the Defendants has been served with the Amended Petition.  Ex. D (state court docket sheet).

12.     The Petition seeks a declaratory judgment related to the Defendants' administration of the COVID-19 vaccines.  *See* Ex. B-4 at ¶¶ 134-37 at pp. 77-78.[10]  Specifically, the Petition alleges that "Defendants knowingly and willfully have orchestrated a scheme to fraudulently conceal" from Plaintiff the "known abhorrent risks of being injected" with the COVID-19 vaccine. *Id*. at ¶ 135 (at p. 77), *see also* ¶¶ 108-116 (at pp. 29-30).  Plaintiff alleges that Defendants, through the provision of the FDA-authorized and FDA-approved COVID-19 vaccines, have committed "heinous crimes" and are involved in a "brazen state-wide scheme to bring death and destruction to its citizens."  *Id*. at ¶¶ 18, 22 at pp. 5-6.  The Petition uses the term "inoculation" instead of "vaccine."  *Id.* at p. 6, n.2 ("Maxwell does not acquiesce to the fraudulent term 'vaccine' to describe the experimental Covid inoculations."); *see also* Pet. generally.

13.     Plaintiff also seeks a temporary restraining order and permanent injunction enjoining Defendants from administering the COVID-19 vaccines according to the requirements

---

[10]  To avoid confusion, Walmart notes that the numbering of the paragraphs in Plaintiff's Petition restarts at page 47.

of and as authorized by the CDC and FDA.  *See* Ex. B-5 (Temporary Restraining Order and Addendum to Am. Pet.); *see also* Ex. B-4, Pet. at ¶¶ 138-162 at pp. 78-84.  In addition, Plaintiff asks that the Court order Defendants to provide to all their patients a "Consent Form" authored by Plaintiff prior to administering any COVID-19 vaccine instead of the FDA and CDC-authorized Vaccine Information Fact Sheet.  *See* Ex. B-5 (Temporary Restraining Order and Addendum). Plaintiff alleges that the FDA- and CDC-mandated Vaccine Fact Sheet is inadequate as it does not inform him of all the adverse events associated with the COVID-vaccine.  In addition, Plaintiff alleges that the Fact Sheet does not inform him of all of the vaccine's chemical ingredients and adverse events thereto, and that the information contained in the vaccine information sheets is false.  *Id*. at ¶¶ 55-63 (at pp. 14-16); 161-63 (at pp. 44-45); ¶¶ 1-7 (at pp. 47-48); ¶ 44 (at 56).

14.     Plaintiff also seeks an "award of actual and punitive damages."  *Id*. at ¶¶ 22, 24, 25 (at pp. 5-7), 137 (at p. 78), Prayer for Relief (at p. 85).

15.     Plaintiff alleges he has never received a COVID-19 vaccine.  *See id*. at ¶¶ 51 (at p. 13), 44 (at 57), 143 (at p. 80).

**BASES FOR FEDERAL JURISDICTION AND REMOVAL**

**I.     REMOVAL IS PROPER UNDER THE FEDERAL OFFICER REMOVAL STATUTE.**

16.     Removal is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer.  Removal rights under this section are much broader than under the general removal statute, 28 U.S.C. § 1441.  Suits against defendants acting on behalf of federal officers "may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  This is because Section 1442 protects "the government's need to provide a federal forum for its officers and those who are 'acting under' a federal office." *Albrecht v. A.O. Smith Water Prod.*, No. 11 Civ. 5990 (BSJ), 2011 WL 5109532,

at *3 (S.D.N.Y. Oct. 21, 2011). This important federal policy "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

17. As the Fifth Circuit has recently explained, the removing defendant must establish that: (1) the defendant is a "person" under the statute; (2) the defendant was "acting under" the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) the defendant was acting "under color of" federal office at the time of the allegedly tortious conduct; and (4) the defendant raises a "colorable" federal defense. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291 (5th Cir. 2020); *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 461-62 (5th Cir. 2016); *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 397 (5th Cir. 1998). All requirements for removal under § 1442(a)(1) are satisfied here.

18. The first requirement for removal under Section 1442 is satisfied because Walmart is a "person" under the statute. For purposes of § 1442(a)(1), the term "person" includes "companies, associations, firms, [and] partnerships." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 812 (3d Cir. 2016) (quoting 1 U.S.C. § 1); *Latiolais,* 951 F.3d at 291; *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135-36 (2d Cir. 2008) (holding non-natural person to be a "person" under § 1442).

19. To satisfy the second requirement ("acting under" a federal officer) "a private person's actions 'must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Jacks v. Meridian Res. Co.*, LLC, 701 F.3d 1224, 1230 (8th Cir. 2012) (holding that health insurer working with the U.S. Office of Personnel Management was "acting under" a federal officer) (quoting *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 152 (2007)). "The words 'acting under' are to be interpreted broadly." *Isaacson*, 517 F.3d at 136. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or

agency." *Papp*, 842 F.3d at 813; *see also Jacks*, 701 F.3d at 1230 (although "not limitless, '[t]he words "acting under" are broad,' and the Supreme Court 'has made clear that the statute must be "'liberally construed.'"") (*quoting Watson*, 551 U.S. at 147); *see also Latiolais*, 951 F.3d at 296.

20.     The "acting under" requirement is met here because Plaintiff directly challenges Walmart's alleged conduct in providing life-saving COVID-19 vaccines during a pandemic "that, in the absence of Defendants, the Government would have had to [administer] itself." *Isaacson*, 517 F.3d at 137.  As discussed above, Walmart delivers the COVID-19 vaccines to its patients at the direction of the federal government, CDC and FDA, and to assist the federal government in its ongoing efforts in fighting the COVID-19 pandemic and saving millions of American lives. Walmart's administration of the COVID-19 vaccines is done in strict compliance with the CDC's and FDA's requirements and mandates, and with significant involvement of the federal government.  These requirements and mandates include the warnings and information Walmart is required to provide to patients prior to the administration of the vaccines, such as the COVID-19 Vaccine Information Fact Sheet.  The federal government dictates which parts of the population are to receive the COVID-19 vaccines at what time periods, supplies the vaccines and the materials necessary to administer them, the vaccination cards, the registration and reporting procedures, and mandates all the protocols to be followed during the administration of the vaccines.  As such, the "acting under" requirement is met here. *See e.g. Latiolais*, 951 F.3d at 296; *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998) (authorizing removal of a tort suit against private defense contractors that manufactured Agent Orange); *In re Nat' Prescription Opiate Litig.*, 327 F. Supp. 3d 1064, 1075-76 (N.D. Ohio 2018) (removal under § 1442 was appropriate where defendant was subject to "precise specifications" of the government, administration was overseen by a federal official, and absent the defendant's role, government would have had to warehouse and distribute product itself); *Gordon v. Air & Liquid Sys. Corp.*, 990 F. Supp. 2d 311,

320 (E.D.N.Y. 2014) (defendant was "acting under" a federal officer for purposes of removal statute when it provided products used in construction of ships to Navy's precise specifications).

21.     The "causation" requirement is also satisfied.  The second prong, that a defendant's actions were taken "under color of federal office . . . has come to be known as the causation requirement."  *Isaacson*, 517 F.3d at 137 (internal quotation marks, alterations, and citation omitted).  Like the "acting under" requirement, "[t]he hurdle erected by this requirement is quite low." *Id.*  Courts "credit Defendants' theory of the case when determining whether [this] causal connection exists." *Isaacson*, 517 F.3d at 137 (*citing Acker*, 527 U.S. at 431-32) ("demanding an airtight case on the merits in order to show the required causal connection" would "defeat the purpose of the removal statute").[11]  In 2011, Congress further expanded Section 1442 by amending section 2(b) to permit removal "for *or relating to* any acts under color" of federal office, so as "to broaden the universe of acts that enable Federal officers to remove to Federal court."  H.R. REP. 112-17, 6, 2011 U.S.C.C.A.N. 420, 425 (emphasis showing addition); *see also Latiolais*, 951 F.3d at 296.

22.     "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." *Isaacson*, 517 F.3d at 137-38 (emphasis in original).

23.     Here, Plaintiff's claims arise from Walmart's administration of the FDA-authorized or –approved COVID-19 vaccines.  Plaintiff alleges that the FDA and CDC-mandated Vaccine Information Fact Sheet or Vaccine Information Statements are not adequate in informing him about the adverse events associated with the COVID-19 vaccines. *See* Ex. B-4, Pet. at ¶ 135 (at p. 77), *see also* ¶¶ 108-116 at (pp. 29-30); p. 6, n.2; ¶¶ 55-63 (at pp. 14-16); 161-63 (at pp. 44-45);

---

[11] The "acting under" and "under color of" prongs overlap. Both "are satisfied if the actions subject to suit resulted directly from government specifications or direction." *Albrecht*, 2011 WL 5109532, at *5.

¶¶ 1-7 (at pp. 47-48); ¶ 44 (at 56).  Thus, a causal nexus exists between Plaintiff's claims and Walmart's actions mandated by the federal government.  *See Latiolais*, 951 F.3d at 296 (finding that "acting under the color of federal office" and "connection" requirements of the removal statute were met where plaintiff's allegations that defendant "failed to warn him of the dangers of asbestos and failed to take measures to prevent exposure . . . [was] connected with the installation of asbestos during the refurbishment of the [ship] which defendant performed "pursuant to directions of the U.S. Navy."); *Cty. Bd. of Arlington Cty., Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 257 (4th Cir. 2021).

24.     The fourth requirement—a "colorable federal defense"—is also satisfied here.  "To be 'colorable,' the asserted federal defense need not be 'clearly sustainable,' as section 1442 does not require a federal official or person acting under him 'to win his case before he can have it removed.  Instead, an asserted federal defense is colorable unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous."  *Latiolais*, 951 F.3d at 296 - 97 (internal citations omitted).

25.     This requirement is satisfied by Walmart's assertion of the defenses afforded to it by the PREP Act 42 U.S.C. §§ 247d-6d, 247d-6e, PHS Act. 42 U.S.C. § 262, and FD&C Act 21 U.S.C. §§ 331, 355, 360bbb-3 and corresponding implementing regulations.

26.     First, Plaintiff is barred from pursuing a litigation claim and seeking monetary damages against Walmart under the PREP Act because he is required by law to first file an administrative proceeding.  In codifying the PREP Act, Congress took great pains to set out an extensive, streamlined no-fault, federal pre-litigation administrative claims process to ensure a remedy and fairness for claimants and respondents by:

- Setting up a no-fault monetary fund to compensate eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure. § 247d-6e(a);

- Directing that access to the monetary fund must be exhausted *before* being allowed to proceed to the alternative *federal* civil litigation process. § 247d-6e(d)(1);

- Requiring an exclusive *federal* remedy for all claims related to PREP Act countermeasures: "The remedy provided by [the monetary fund] shall be *exclusive* of any other civil action or proceeding for any claim or suit this section encompasses, except for a proceeding under section 247d–6d of this title." § 247d-6e(d)(4) (emphasis added); and

- Mandating that the only recovery for claims enjoying PREP Act protection shall be through the monetary fund or through the litigation process of § 247d-6d: "the individual has an *election* to accept the compensation [under the monetary fund] or to bring an action under section 247d–6d(d) of this title." § 247d-6e(d)(5) (emphasis added).[12]

27.    Second, the PREP Act immunizes Walmart from Plaintiff's state law claims.  Under The PREP Act, "[A] covered person shall be *immune from suit and liability* under Federal *and State law with respect to claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure* if a declaration under subsection (b) has been issued with respect to such countermeasure."  § 247d-6d(a)(1) (emphases added).  Plaintiff alleges that the COVID-19 vaccine Fact Sheet provided to him by Walmart was not adequate in warning him of the vaccines' adverse events.  Ex. B-4. at ¶ 135 (at p. 77), *see also* ¶¶ 108-116 at (pp. 29-30); p. 6, n.2; ¶¶ 55-63 (at pp. 14-16); 161-63 (at pp. 44-45); ¶¶ 1-7 (at pp. 47-48); ¶ 44 (at 56).  As alleged, Plaintiff's claims fall squarely within the purview of the PREP Act.  Walmart is a "covered person" under the Act and the administration of the COVID-19 vaccines is a "covered countermeasure."[13]  As a pharmacy enlisted to fight the COVID-

---

[12]  If plaintiffs exhausted remedies available under the Fund, their sole recourse would be a *federal* cause of action for death or serious physical injury proximately caused by only "willful misconduct," which may only be filed in the United States District Court for the District of Columbia. § 247d-6d(e)(1).  Based on the allegations as stated in the Petition, this exception does not apply in this case.

[13]  The PREP Act defines "covered person" to include: [A] person or entity that is (i) a manufacturer of such countermeasure; (ii) a distributor of such countermeasure; *(iii) a program planner of such countermeasure;* (iv) *a qualified person* who prescribed, *administered,* or dispensed *such countermeasure;* or (v) an official, *agent, or employee of a person or entity described in clause (i), (ii), (iii), or (iv).* § 247d-6d(i)(2)(B) (emphases added).  The term "qualified person" is defined as: (A) *a licensed health professional* or other individual who is authorized to prescribe, *administer*, or dispense such countermeasures under the

19 pandemic through the administration of FDA-authorized and FDA-approved COVID-19 vaccines, Walmart meets the statutory definitions such that the PREP Act applies to it in this case. Thus, Walmart is immune from Plaintiff's claims.[14]

28.     In addition, Plaintiff's claims are preempted by FD&C Act 21 U.S.C. §§ 331, 355, 360bbb-3 and section 351 of the Public Health Service Act ("PHS Act.") (42 U.S.C. § 262) and corresponding implementing regulations.

29.     The federal preemption doctrine arises from the Supremacy Clause of the Constitution, U.S. const. art. VI, cl.2, and federal legislation may expressly or impliedly preempt state law. *See, e.g., Fidelity Fed. Sav. & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 152–53 (1982).

30.     Under section 360bbb-3, the HHS Secretary "may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in

---

law of the State in which the countermeasure was prescribed, administered, or dispensed; or (B) a person within a category of persons so identified in a declaration by the Secretary. See § 247d-6d(i)(8) (emphasis added). "Program planners" are persons or entities who: supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or provides a facility to administer or use a covered countermeasure. § 247d-6d(i)(6) (emphasis added). "Qualified pandemic products" include those used to treat a pandemic or limit the harm a pandemic might other cause. § 247d-6d(i)(7).

The PREP Act provides immunity for "recommended activities," including distribution, *administration,* or use of *covered countermeasures* against COVID-19. *See* 85 Fed. Reg. 15198, 15201. "Covered countermeasures" are "any antiviral, any other *drug, any biologic*, any diagnostic, any other device, any respiratory protective device, or *any vaccine*, used to treat, diagnose, cure, prevent, *or mitigate COVID-19*, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product." 85 Fed. Reg. 21012, 20104 (emphases added).

[14]  *See also* HHS Advisory Opinion on the PREP Act and the March 10, 2020 Declaration, P2 (May 19, 2020). And, HHS has insisted from the beginning of the COVID-19 battle that the protections of the PREP Act—specifically immunity—are to be given "broad" applicability. § 247d-6d; *see also* HHS Advisory Opinion 21-01, P3 (The PREP Act "extends immunity to anything 'relating to' the administration of a covered countermeasure").

this section as an 'emergency use.')." 21 U.S.C. § 360bbb-3.  In addition, only FDA can approve the use of a vaccine, including the COVID-19 vaccine.  21 U.S.C. §§ 331, 355, 42 U.S.C. § 262.

31.     Further, any warnings accompanying the vaccines are also determined by federal law and must be approved by FDA, "the regulatory authority with oversight of the safety, effectiveness and quality of vaccines that are used in the U.S., including COVID-19 vaccines."[15] *See also id.*

32.     The CDC explains that "[f]or each COVID-19 vaccine authorized under an Emergency Use Authorization (EUA), the Food and Drug Administration (FDA) requires that vaccine recipients or their caregivers are provided with certain vaccine-specific EUA information to help make an informed decision about vaccination.  This is accomplished by providing an EUA Fact Sheet for Recipients and Caregivers. . . . The EUA Fact Sheet is specific to each authorized COVID-19 vaccine, is developed by the manufacturer of the vaccine, and is authorized by the FDA."[16]  Similarly, an FDA-approved vaccine fact sheet or statement must be provided to the patient for the FDA-approved COVID-19 vaccines.  Therefore, any state law requiring Walmart to provide its patients COVID-19 Vaccine Information Sheets and warnings different from the one approved and mandated by FDA, as Plaintiff is asking the Court to do here, would render the vaccine "misbranded" and is preempted by federal law.[17]  21 U.S.C. § 352; 42 U.S.C. § 262.

33.     A defendant need not prove its defense at the removal stage; a defendant need only show that a federal defense is "colorable."  *Latiolais*, 951 F.3d at 296.  To be "colorable," the

---

[15]  https://www.fda.gov/consumers/consumer-updates/learn-more-about-covid-19-vaccines-fda.

[16]  CDC, COVID-19 Vaccine Emergency Use Authorization (EUA) Fact Sheets for Recipients and Caregivers, https://www.cdc.gov/vaccines/covid-19/eua/index.html (last accessed Nov. 18, 2021).

[17]  To the extent, Plaintiff claims that Walmart has mislead the FDA, those claims are preempted under *Buckman v. Plaintiffs Legal Commission*, 531 U.S. 341 (2001) (holding that federal law preempts fraud-on-the-FDA claims); *see also* 21 U.S. Code § 337(a).

asserted federal defense need not be "clearly sustainable," as section 1442 does not require a federal official or person acting under him "to 'win his case before he can have it removed.'" *Id.* (quoting *Acker*, 527 U.S. at 430).

34.     At the removal stage, the inquiry "is purely jurisdictional, and neither the parties nor the district courts should be required to engage in fact-intensive motion practice, pre-discovery, to determine the threshold jurisdictional issue." *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) (citing *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n.12 (2006)).  Moreover, "this inquiry is undertaken whilst viewing the facts in the light most favorable to Defendants." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 783-84 (E.D. Pa. 2010).  "Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" *Cuomo*, 771 F.3d at 116 (quoting *Willingham*, 395 U.S. at 409).

35.     Therefore, removal is proper under the federal officer removal statute.

## II.     REMOVAL IS PROPER BECAUSE THE PETITION PRESENTS A FEDERAL QUESTION.

36.     Removal is also proper pursuant to 28 U.S.C. §§ 1331 and 1441 because Plaintiff's claims present a substantial federal question under the PREP Act, 42 U.S.C. §§ 247d-6d(d), 247d-6e, PHS Act 42 U.S.C. § 262, and FD&C Act 21 U.S.C. §§ 331, 355, 360bbb-3, and their implementing regulations.

37.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

38.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see also Gully v. First Nat'l Bank*, 299

U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."); *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) (concluding federal question raised where "Plaintiffs' dependence on federal law permeates the allegations such that the [claims purportedly brought under state law] cannot be adjudicated without reliance on and explication of federal law").

39.     Thus, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005) (same); *Bd. of Commissioners of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 722 (5th Cir. 2017).  "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 314); *see also In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170, 171–73 (E.D.N.Y. 2005) (finding jurisdiction under *Grable* where state law claims alleged pharmaceutical company improperly promoted drugs for off-label use in violation of the FDCA and its implementing regulations); *W. Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230, 234 (E.D.N.Y. 2007).

40.     As set forth below, this case meets all four requirements.[18]

---

[18]  The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims.  *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

41.    Although Plaintiff purports to disavow stating a federal question and ostensibly pleads his theories of recovery against Walmart as state law claims, Plaintiff bases the underlying theory of liability on Walmart's alleged violations of federal law or alleged duties arising out of federal law, specifically the PREP Act, 42 U.S.C. §§ 247d-6d(d), 247d-6e, PHS Act 42 U.S.C. § 262, and FD&C Act 21 U.S.C. §§ 331, 355, 360bbb-3, and their implementing regulations.

42.    **First**, Plaintiff's state law claims "necessarily raise" a federal question because "[the] asserted right to relief under state law requires resolution of a federal question." *R.I. Fishermen's All.*, *Inc., v. Rhode Island Dep't of Envtl. Mgmt.,* 585 F.3d 42, 49 (1st Cir. 2009). As pleaded, Plaintiff claims that the FDA-authorized or -approved and CDC-issued COVID-19 Vaccine Information Fact Sheets that Walmart provides to its patients are inadequate, false, and misleading. *See* Ex. B-4. at ¶ 135 (at p. 77), *see also* ¶¶ 108-116 at (pp. 29-30); p. 6, n.2; ¶¶ 55-63 (at pp. 14-16); 161-63 (at pp. 44-45); ¶¶ 1-7 (at pp. 47-48); ¶ 44 (at 56). In addition, Plaintiff alleges that Walmart should be enjoined from providing its patients the FDA-authorized or -approved COVID-19 Vaccine Information Fact Sheets prior to the administration of the vaccine and instead provide an unauthorized form authored by him. *See* Ex. B-5 (Temporary Restraining Order and Addendum to Am. Pet.); *see also* Ex. B-4, Pet. at ¶¶ 138-162 at pp. 78-84. Plaintiff also directly challenges the FDA's decisions to authorize or approve the COVID-19 vaccines. Ex. B-5 at ¶ 20 n.2 (at p. 6); ¶¶ 60-62 (at p. 16), ¶ 75 (at 19), ¶¶ 104-107 (at 28-29), ¶ 160 (at p. 43), ¶ 6 (at 47), ¶ 78 n.15 (at p. 67). Plaintiff does not identify Texas authority to serve as the basis of its claims against Walmart, though he purports to do so. While Plaintiff purports to base his claims on section 148.002 of the TEX. CIV. PRAC. & REM. CODE ("Code"), the Code provides no basis for challenging the FDA's authority to approve or authorize a vaccine and issue related warnings or other patient instruction or information sheets. Neither does the Texas Code require Walmart or a provider of a vaccine to NOT provide patients FDA-authorized or –approved vaccine information

sheets or warnings. *See* Tex. Civ. Prac. & Rem. Code Ann. § 148.002. Instead, the Code provides immunity from negligent acts to manufactures and other entities in relation to products designed, manufactured, sold or donated during a pandemic emergency. *Id*. Thus, the only conceivable basis for the duties on which Plaintiff's claims rest (*i.e.*, the duties to inform patients of the benefits and adverse effects of COVID-19 vaccines) are the PREP Act, 42 U.S.C. §§ 247d-6d(d), 247d-6e, PHS Act 42 U.S.C. § 262, and FD&C Act 21 U.S.C. §§ 331, 355, 360bbb-3, and their implementing regulations. Plaintiff therefore has pleaded federal questions merely dressed up as state law claims.

43.     While plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, at 392 (1987) (emphasis added), Plaintiff here alleges violations of federal duties as the basis for his state-law claims. Plaintiff moreover "may not defeat removal by omitting to plead necessary federal questions in a complaint." *Hughes v. Chevron Phillips Chem. Co. LP*, 478 F. App'x 167, 171 (5th Cir. 2012) (quoting *Franchise Tax Bd. of State of Cal. V. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 22 (1983)).

44.     **Second**, this federal issue is "actually disputed" because the parties disagree as to the existence and scope of alleged duties arising under the PREP Act, PHS and FD&C Act and whether Walmart violated its duties. Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

45.     **Third**, the federal issue presented by Plaintiff's claims is "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260; *see also Tenn. Gas*, 850 F.3d at 724. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of

a uniform body of [federal] law." *Id*. at 260-62 (citation omitted).  As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  545 U.S. at 312.  "If even one claim in the complaint involves a substantial federal question, the entire matter may be removed."  *Lee v. Borders*, No. 4:09CV1977 TIA, 2010 WL 3000065, at *1 (E.D. Mo. July 28, 2010).

46.     Plaintiff's theories of Walmart's liability necessarily require that a court determine the existence and scope of Walmart's obligations under federal law because regulation of a vaccine is first and foremost dependent on federal laws and regulations.  Plaintiff's theories of Walmart's liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national COVID-19 vaccine supply and administration, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014); *see also Tenn. Gas*, 850 F.3d at 725 (finding federal jurisdiction where the resolution of the state claims "could affect coastal land management in multiple states as well as the national oil and gas market.").

47.     **Fourth**, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258.  Litigating this case in a state court runs the risk of the state court applying federal requirements on COVID-19 vaccine administration inconsistently.  Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."  *PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (quoting *Grable*, 545 U.S. at 313); *see also Tenn. Gas*, 850 F.3d at 725.

48.     In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

49.     To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a), which grants district court jurisdiction over state claims forming part of the same case or controversy. *See, e.g., S. Council of Indus. Workers v. Ford*, 83 F.3d 966, 969 (8th Cir. 1996).

## PROCEDUREAL COMPLIANCE

50.     Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81, copies of all process, pleadings, and orders served upon and by Walmart related to this action are attached as exhibits in the following manner:

> Exhibit A: Index of matters being filed
>
> Exhibit B: Copies of all pleadings and answers filed in the case
>
> Exhibit C: Copies of all process and orders served upon Defendants
>
> Exhibit D: Civil court cover sheet and the state court docket sheet
>
> Exhibit E: Defendants' Consent to Removal
>
> Exhibit F: Index of all counsel record, including addresses, telephone numbers and parties represented.

51.     Pursuant to 28 U.S.C. § 124(b), the United States District Court for the Southern District of Texas, Galveston Division, is the federal judicial district encompassing the District Court of Brazoria County, Texas, where this suit was originally filed.  Venue is therefore proper in this district under 28 U.S.C. § 1441(a).

52.     This Notice of Removal is timely.  Walmart files this Notice of Removal within 30 days of November 1, 2021, the date of service of the initial pleading upon Walmart.  *See* 28 U.S.C.

§ 1446(b)(1); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354, 119 S. Ct. 1322, 1328, 143 L. Ed. 2d 448 (1999).

53.    "Removal under § 1442(a) . . . does not require the consent of co-defendants." *Humphries v. Elliott Co.*, 760 F.3d 414, 417 (5th Cir. 2014) (citations omitted).    However, all served Defendants consent to this removal.    *See* 28 U.S.C. § 1446(b)(2)(A); Ex. E-1, Consent to Removal by CVS Pharmacy, Inc.; Ex. E-2, Consent to Removal by H-E-B, LP; Ex. E-3, Consent to Removal by The Kroger Co.; Ex. E-4, Consent to Removal by Walgreen Co.    Defendant University of Texas Medical Branch, Galveston aka UTMB Health has not been properly served. *See* Ex. D (state court docket sheet showing no returns of service for this defendant).

54.    Pursuant to 28 U.S.C. § 1446(d), Walmart will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff.

55.    By filing this Notice of Removal, Walmart and the consenting Defendants expressly reserve, and do not waive, any and all defenses that may be available to them, including those related to personal jurisdiction and service of process.    If any question arises as to propriety of removal to this Court, Walmart requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

56.    Walmart reserves the right to amend or supplement this Notice.

### JURY DEMAND

57.    Walmart hereby demands trial by jury.

### CONCLUSION

For the foregoing reasons, Walmart removes this lawsuit to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1442, and 1446 (and any other applicable laws).

Dated:  November 22, 2021

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.


By: */s/ E. James Shepherd*

E. James Shepherd
State Bar No.:  24008025
SDTX ID No.: 23777
eshepherd@shb.com
**Attorney-in-Charge**
Sonila Themeli
State Bar No.:  24073588
SDTX ID No.: 2828237
sthemeli@shb.com
600 Travis Street, Suite 3400
Houston, TX  77002-2926
Telephone:     (713) 227-8008
Facsimile:     (713) 227-9508


*Attorneys for Defendant WALMART INC. (improperly identified as Wal-Mart Stores Texas LLC)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 22nd day of November, 2021, the above and foregoing document was filed electronically through the CM/ECF system, and a copy has been served on all known counsel of record and pro se Plaintiff in accordance with the Federal Rules of Civil Procedure via electronic mail and U.S. Postal Service, addressed as follows:

**FOR PLAINTIFF, LARRY MAXWELL:**

Larry Maxwell
2122 Tower Bridge Rd.
Pearland, TX  77581
Telephone:   (713) 816-2942
Email:  Larry@earthloc.com

**FOR DEFENDANT, WALGREEN CO.:**

John Philip 'Phil' Griffis
State Bar No. 08476400
THE LAW OFFICE OF PHIL GRIFFIS
1322 Space Park Drive, Suite A248
Houston, TX  77058
Telephone:   (832) 284-4013
Email: pgriffis@griffislawfirm.com

**FOR DEFENDANT, CVS PHARMACY, INC.:**

Katherine M. Harrington
State Bar No. 24092489
FOLEY & LARDNER, LLP
1000 Louisiana Street, Suite 2000
Houston, TX 77002
Telephone:   (713) 276-5022
Facsimile:   (713) 276-5555
Email: kharrington@foley.com

**FOR DEFENDANT, H-E-B, LP:**

Gavin R. Villareal
State Bar No. 24008211
BAKER BOTTS L.L.P.
98 San Jacinto Boulevard, Suite 1500
Austin, TX 78701-4078
Telephone:   (512) 322-2652
Facsimile:   (512) 322-8341
Email: gavin.villareal@bakerbotts.com

**FOR DEFENDANT, THE KROGER CO.:**

Steven R. Rech
State Bar No. 16649200
VORYS, SATER, SEYMOUR
and PEASE, LLP
909 Fannin Street, Suite 2700
Houston, TX  77010
Telephone:   (713) 588-7000
Facsimile:   (713) 588-7050
Email: srech@vorys.com

/s/ Sonila Themeli
Sonila Themeli

- 22 -